**SEMPERIT INDUSTRIAL PRODUCTS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 90–10–00566.
Slip Op. 94–100.

United States Court of
International Trade.

June 14, 1994.

Coudert Brothers, Robert L. Eisen, Michelle S. Benjamin, Steven H. Becker, and Robin E. Gruber, New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, Washington, DC, on brief (Sheryl A. French, Atty., U.S. Customs Service, of counsel), for defendant.

## OPINION

CARMAN, Judge:

Plaintiff initiated this action pursuant to 19 U.S.C. § 1515(a) (1988) to contest the denial of its protest against the United States Customs Service's (Customs) appraisal of certain merchandise that plaintiff had imported from Austria and Korea. This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, enters judgment for plaintiff.

## I. BACKGROUND

### A. The Merchandise

The merchandise at issue in this case consists of industrial conveyor belts produced from a combination of vulcanized rubber and textile material. The textile material has one or more plies of woven textile fabric that contains only man-made textile fiber. The particular fiber in the fabric is polyester in the warp and nylon in the weft, or only polyester.[1] The width of all of the imported belts exceeds 20 centimeters.

The subject merchandise has a wide range of applications in the handling of bulk materials. The belts are useful in any industry that requires the transportation of bulk merchandise from one location to another. Companies utilize the subject merchandise in steel works, mining operations, lime and cement works, gravel and sand works, and in the paper, building, and chemical industries.

### B. Statutory Provisions

Plaintiff relies on the following provisions of the Harmonized Tariff Schedules of the United States (HTSUS):[2]

---

[1.] The "warp" of a fabric generally refers to "a series of yarns extended lengthwise in a loom thereby forming the lengthwise threads of a woven fabric...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2577 (1st ed. 1986). The "weft" of a fabric usually describes "the thread or yarn that crosses the warp...." *Id.* at 2592.

[2.] All of the HTSUS provisions cited by the Court appear in HTSUS (1st ed. Supp. 2 1989).

1. 4010 Conveyor or transmission belts or belting, of vulcanized rubber:
   . . . .
   Other:
   Of a width exceeding 20 cm:
   Combined with textile materials:
   . . . .
   4010.91.19    Other ... 2.4%....

2. GENERAL RULES OF INTERPRETATION

Classification of goods in the tariff schedule shall be governed by the following principles:

. . . .
3. When, by application of rule 2(b) or for any other reason, goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:

    (a)    The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

    (b)    Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

    (c)    When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

3. ADDITIONAL U.S. RULES OF INTERPRETATION

1. In the absence of special language or context which otherwise requires—

. . . .
    (d)    the principles of section XI regarding mixtures of two or more textile materials shall apply to the classification of goods in any provision in which a textile material is named.

4.

SECTION XI
TEXTILES AND TEXTILE ARTICLES

Notes

. . . .
2.    (A)    Goods classifiable in chapters 50 to 55 or in heading 5809 or 5902 and of a mixture of two or more textile materials are to be classified as if consisting wholly of that one textile material which predominates by weight over each other single textile material.

Plaintiff also cites to the following item from the Tariff Schedules of the United States (TSUS) (1987):

Belting and belts, for machinery, of textile fibers or of such fibers and rubber or plastics:
> ....
>> Other:
>>> ....

358.16     Other ... 2.4% ad val.

Defendant, in turn, relies on the following HTSUS provision:

4010   Conveyor or transmission belts or belting, of vulcanized rubber:
> ....
>> Other:
>>> Of a width exceeding 20 cm:
>>>> Combined with textile materials:
>>>>> ....

4010.91.15     With textile components in which man-made fibers predominate by weight over any other single textile fiber ... 8%....

---

## C. *Customs' Classification*

The United States Customs Service (Customs) classified the conveyor belts at issue under subheading 4010.91.15, HTSUS. Subheading 4010.91.15 applies to the following merchandise: "Conveyor or transmission belts or belting, of vulcanized rubber: .... Other: Of a width exceeding 20 cm: Combined with textile materials: .... With textile components in which man-made fibers predominate by weight over any other single textile fiber." Pursuant to this subheading, Customs imposed duties totalling 8% *ad valorem*.

Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) (1988) to contest Customs' classification. Customs subsequently denied the protests under 19 U.S.C. § 1515 (1988) and, after having paid all liquidated duties, plaintiff commenced this action within the time allowed by law. On March 4, 1992, the Court granted plaintiff's motion to designate this action a test case.

## II. CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

Plaintiff advances several arguments in support of its position. First, plaintiff contends subheading 4010.91.15 is inapplicable to the imported belts because the belts' textile components consist only of man-made fibers.

Pl.'s Br. at 9. According to plaintiff, subheading 4010.91.15 "explicitly requires that the textile component of the conveyor belts be comprised of more than one class of textile fiber." *Id.* at 10. In essence, plaintiff asserts the words "predominate by weight over any other single textile fiber" clearly presupposes the existence of two classes of textile fibers—one man-made and the other vegetable or animal—which Customs may measure. *See id.* at 14–15.

Second, plaintiff maintains the application of subheading 4010.91.15 to the merchandise would render the term "predominate" meaningless. *See id.* at 15–16. Plaintiff bases this argument on the fact that imported belts contain only one class of fibers, man-made fibers. *Id.* at 15. According to plaintiff, "[w]hen man-made fibers are the only textile fibers present, ... man-made fibers *cannot* 'predominate over' any other single textile fiber, as required by subheading 4010.91.15, HTSUS." Pl.'s Reply Br. at 3 (emphasis in original). Therefore, plaintiff urges conveyor belts such as those at issue which have only one class of fibers are outside the scope of the subheading and fall under the basket provisions contained in subheading 4010.91.-19. Pl.'s Br. at 16. Moreover, plaintiff charges the meaning given to the terms "predominate by weight" by the Additional U.S. Rules of Interpretation 1(d) and Section XI, Note 2(A) further demonstrates the language

only embraces merchandise possessing more than one class of fiber. *See id.* at 16–17.

Third, plaintiff claims the TSUS predecessor of the disputed subheadings and other legislative materials indicate the imported belts are properly classifiable under subheading 4010.91.19. *Id.* at 19. Plaintiff emphasizes the fact that in changing from the former TSUS to the current HTSUS Congress did not intend to alter a particular import's classification or tariff rate. *See id.* at 19–20 (citing Conversion of the Tariff Schedules of the United States Annotated into the Nomenclature of the Harmonized System, Submitting Report, USITC Pub. 1400, Inv. No. 332–131, at 2 (1983)) (ITC Report). Because Customs formerly classified the subject merchandise under item 358.16, TSUS,[3] and imposed duties of 2.4% *ad valorem* and has now classified the merchandise under subheading 4010.91.15 and sought duties of 8% *ad valorem*, plaintiff suggests Customs' current treatment conflicts with the purposes underlying the conversion to the HTSUS. *See id.* at 19–20, 25–26.

Finally, plaintiff asserts Customs' classification does not accord with cross-reference tables found in the ITC Report which correlate former TSUS items with HTSUS subheadings. *Id.* at 22–23 (citing ITC Report at 85, 94, 301, 316). According to plaintiff, these tables clearly indicate item 358.16, TSUS, correlates to subheading 4010.91.19, HTSUS and also preclude the application of subheading 4010.91.15 to the subject merchandise. *Id.* at 22–23. Consequently, plaintiff maintains Customs erroneously classified the imported belts under subheading 4010.-91.15.

## B. *Defendant*

Defendant urges the Court to sustain Customs' classification decision on three primary grounds. First, contrary to the interpretation urged by plaintiff, defendant contends "[w]hen man-made fibers are the only textile

fibers present, as with the imported merchandise, man-made fibers predominate over any other single textile fiber, as required by HTSUS subheading 4010.91.15." Def's Br. at 4. According to defendant, this subheading "does *not* require the presence of more than one 'class of' textile fiber in order for man-made fibers 'to predominate by weight over any other single textile fiber.'" *Id.* at 3 (emphasis in original).

Defendant maintains "the common meaning of the term 'predominates' does not require the physical presence of another entity for comparison." *Id.* at 9. In addition, defendant asserts "[e]ven if a comparison is indicated by definition or use [of the term 'predominate,'] neither the definitions nor use of the term in the HTSUS require the actual physical presence of another entity (*e.g.*, textile fibers other than man-made fibers), rather than the complete **absence** of any other entity, for comparison." *Id.* at 10–11 (emphasis in original). Defendant also claims the use of the term "predominate" in subheading 4010.91.15 "merely requires that man-made fibers be superior in weight . . . or dominate over 'any other single textile fiber.'" *Id.* at 11. In sum, according to defendant, "[t]he fact that the statute provides instructions for situations where other textile fibers **may** be present with man-made fibers does not mean that articles in which **only** man-made fibers are present are precluded from classification under HTSUS subheading 4010.91.15." *Id.* at 12–13 (emphasis in original).

The second primary basis upon which defendant urges the Court to sustain Customs' classification is that the agency's interpretation of subheading 4010.91.15 is reasonable. *Id.* at 11, 14. Defendant relies on various cases which defendant suggests require the Court to accord Customs' classification decision "due deference" and to sustain the decision "'unless there are compelling indications that it is wrong.'"[4] *Id.* at 14 n. 19, 4–6 (quoting *Miller v. Youakim*, 440 U.S. 125,

---

**3.** As noted above, item 358.16 encompassed "[b]elting and belts, for machinery, of textile fibers or of such fibers and rubber or plastics: .... Other: .... Other...."

**4.** During oral argument, defendant retreated from the position it had taken in its brief regard-

ing the degree of deference it claimed the Court should accord to Customs' classification decisions. *See* Excerpt of Tape Recorded Hearing (Tr.) at 25, 30 (acknowledging "where there is a statutory term at issue, ultimately the court does make a *de novo* determination" and indicating the government does not argue the *Chevron* ratio-

145 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194 (1979)) (citing *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843 n. 11, 104 S.Ct. 2778, 2782 n. 11, 81 L.Ed.2d 694 (1984); *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978)) (other citation omitted). Defendant also urges the deference owed to Customs' decisions under the HTSUS "is even stronger" because Congress has vested Customs with the responsibility of "interpreting and applying the HTSUS." *Id.* at 6 (citing H.R.CONF.REP. No. 576, 100th Cong., 2d Sess. at 549–50 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582–83).

The third primary basis advanced by defendant for sustaining Customs' decision is that "the history of HTSUS subheadings 4010.91.15 and 4010.91.19, and other indicia of legislative intent, support Customs' classification." *Id.* at 15. Specifically, defendant claims the differences in the language employed in the TSUS provision that applied to the belts and the HTSUS provision under which Customs classified the merchandise in this case indicate Congress intended to change the tariff rate applicable to the merchandise. *See id.* at 15–16. As further evidence of Congress' intent to alter the duty treatment of the belts, defendant points to the fact that the HTSUS has modified the focus embodied in the TSUS on the value of the merchandise's component materials to the weight of such materials. *Id.* at 16–17. Defendant maintains the foregoing changes in statutory language and focus also demonstrate Congress intended to diverge from the principle set forth in the ITC Report and relied upon by plaintiff that the rates established in the TSUS should carry over to the HTSUS. *See id.* at 18–20. Finally, defendant suggests the ITC Report's cross-reference tables cited by plaintiff are inapplicable in this case because the ITC did not consult Customs before drafting the tables pertaining to the merchandise at issue. *See id.* at 21–22.

### III. Discussion

#### A. *Presumption of Correctness*

■ As in all customs cases, a statutory presumption of correctness attaches to classi-

nale applies in the customs classification con-

fications by the Customs Service and the party challenging the classification has the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1) (1988). To determine whether an importer has overcome the statutory presumption, the Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

#### B. *Summary Judgment*

This case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). "The Court will deny summary judgment if the parties present 'a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant.'" *Ugg Int'l, Inc. v. United States,* 17 CIT ——, ——, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). "In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment." *Id.* (citation omitted).

This case does not present any genuine issue of material fact. The facts that are germane to the case's resolution are not in dispute. The issues that remain only require the Court to determine the proper meaning of the tariff provisions advanced by the parties. Such a determination involves questions of law which the Court may properly resolve on motions for summary judgment. *Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 6, 889 F.2d 267, 268 (1989) (citation omitted).

#### C. *Application of Subheading 4010.91.15*

■ It is well-settled that "[t]he ultimate issue as to whether particular merchandise

text).

has been classified under an appropriate tariff provision necessarily depends on the meaning of the terms of that provision. . . ." *Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) ——, ——, 976 F.2d 693, 696 (1992). It is also axiomatic that "[t]ariff terms contained in the statutory language 'are to be construed in accordance with their common and popular meaning, in the absence of contrary legislative intent.'" *Id.* at ——, 976 F.2d at 697 (quoting *E.M. Chems. v. United States,* 9 Fed.Cir. (T) 33, 37, 920 F.2d 910, 913 (1990)). "'To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources.'" *Id.* at ——, 976 F.2d at 697 (quoting *Brookside Veneers, Ltd. v. United States,* 6 Fed.Cir. (T) 121, 125, 847 F.2d 786, 789, *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988)).

■ The resolution of the parties' dispute depends upon the meaning of the term "predominate" as it appears in subheading 4010.-91.15. As noted above, this provision encompasses "[c]onveyor or transmission belts or belting, of vulcanized rubber: . . . . Other: Of a width exceeding 20 cm: Combined with textile materials: . . . . *With textile components in which man-made fibers predominate by weight over any other single textile fiber.*" (Emphasis added). Because nothing in the statute or any other source suggests a contrary legislative intent, the Court must construe the term according to its common and popular meaning. *See id.* at ——, 976 F.2d at 697.

To ascertain the common and popular meaning of the term "predominate," the Court refers to the term's ordinary dictionary definitions. These definitions read as follows: "2. *generally.* a. To have or exert controlling power, to lord it *over;* to surpass in authority or influence, to be superior. . . . b. To be the stronger, main, or leading element; to prevail, preponderate. . . . c. *To occupy a more commanding position; to tower over.*" XII THE OXFORD ENGLISH DICTIONARY 337 (2d ed. 1989) (emphasis in original). Other definitions include the following: "2 a: to exert controlling power or influence:

exercise superiority (as in strength or authority): GOVERN, PREVAIL RULE. . . . b: to hold advantage in numbers or quantity: PREPONDERATE. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1786. When viewed in conjunction with the foregoing definitions, the term "predominate" in subheading 4010.91.15 clearly refers to "man-made fibers" which, in terms of weight and relative to "any other single textile fiber," constitute "the stronger, main, or leading element," or "hold advantage in numbers or quantity." The term thus incorporates a comparison between two or more entities and a determination that one of the entities outweighs the other.

The separate meanings of the prefix "pre" and the word "dominate" reinforce the preceding interpretation. When used with the word "dominate," the prefix denotes the "sense 'before in order of importance, above, in preference to, superior to, more than, beyond[.']" XII THE OXFORD ENGLISH DICTIONARY 297. The word "dominate," in turn, means "[t]o bear rule over, control, sway; to have a commanding influence on; to master." IV THE OXFORD ENGLISH DICTIONARY 947. Notably, although the prefix "pre" and the word "dominate" are distinct linguistic elements, their individual and combined meanings—as seen in the previously noted definitions of the term "predominate"—describe a relationship between two or more entities in which one entity is stronger than another. The term "predominate" and its several parts, therefore, contemplate a hierarchy between two or more elements.

In subheading 4010.91.15, the elements to consider are "man-made fibers" and "any other single textile fiber." The undisputed facts in this case, however, indicate the textile components of the imported belts consist entirely of *one* element—man-made fibers. *See* Pl.'s Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried (Pl.'s Statement) at ¶ 20; Def.'s Resp. To Pl.'s Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried (Def.'s Resp.) at ¶ 20. Because the subject merchandise does not have two or more elements that are subject to comparison, the plain meaning of the term "predomi-

nate" precludes Customs from classifying the subject merchandise under subheading 4010.91.15.

Defendant's position in this case depends upon an incorrect interpretation of the term "predominate." Defendant's interpretation overlooks the fact that the term unequivocally refers to a relationship between *two or more* entities. The Court cannot discern anything in the HTSUS or in the term's common and popular meaning that suggests, as defendant maintains, one entity can "predominate" when no other entities exist. Defendant's argument that the term "predominate" in subheading 4010.91.15 "merely requires that man-made fibers be superior in weight ... or dominate over 'any other single textile fiber'" ignores the simple fact that to "be superior in weight ... or dominate" requires a relationship between two or more elements. Similarly, defendant's contention that the subheading's provisions for "situations where other textile fibers may be present with man-made fibers does not mean that articles in which only man-made fibers are present are precluded" fails to embrace the comparison implicit in the term "predominate" between two or more parts. In sum, the Court concludes defendant's interpretation is contrary to the plain meaning of subheading 4010.91.15 and none of the matters that defendant raises indicates a different meaning should apply. *See Lynteq,* 10 Fed. Cir. (T) at ——, 976 F.2d at 699 ("Absent clear legislative intent to the contrary, the plain meaning of the statute will prevail.") (citation omitted).

■ The Court also rejects defendant's argument that the Court should uphold Customs' classification because the agency based its classification on a reasonable interpretation of subheading 4010.91.15.[5] *See* Def.'s

Br. at 6, 11, 14 n. 19 (citations omitted). Defendant's argument is meritless because it misconstrues the Court's role in Customs classification cases. In such cases, the Court conducts a trial *de novo.* H.R.REP. No. 1235, 96th Cong., 2d Sess. 59 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3770. Although Customs' decisions enjoy a presumption of correctness,[6] the Court's duty in reviewing classification determinations "is to find the *correct* result. . . ." *Jarvis Clark,* 2 Fed.Cir. (T) at 75, 733 F.2d at 878 (emphasis in original) (footnote omitted). Implicit in this function is the Court's responsibility to exercise its own judgment as to what is the proper classification of the merchandise under review. *See id.* at 75, 733 F.2d at 878 (The Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative.").

■ The role that Congress has assigned to the Court in reviewing Customs' classification decisions precludes the deferential standard of review urged by defendant. None of the cases cited by defendant requires a different result. *See, e.g., Chevron,* 467 U.S. at 842–43, n. 11, 104 S.Ct. at 2781–82 n. 11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding"); *Springfield Indus. Corp. v. United States,* 6 Fed. Cir. (T) 114, 116, 842 F.2d 1284, 1285–86 (1988) (noting "the courts must accept the agency interpretation of the law if that interpretation is merely a permissible one ... [and] even if that interpretation is not what the court itself would otherwise have given it") (citations omitted). Although the foregoing decisions are clearly relevant in anti-

---

5. As indicated above, during oral argument defendant appeared to retreat from the position it had adopted in its brief regarding the application of the *Chevron* rationale to Customs' classification decisions. *Compare* Tr. at 25, 30 (suggesting *Chevron* and its progeny do not apply in the customs classification context) *with* Def.'s Br. at 6, 11, 14 n. 19 (indicating *Chevron* and its progeny do apply). Defendant, however, did not rec-

oncile the conflicting positions it presented in its briefs and in its oral argument. Because defendant has taken clearly conflicting positions in this case with respect to the deference question and the issues raised by defendant go to the heart of the Court's judicial review powers, the Court will address the issues in this action.

6. 28 U.S.C. § 2639(a)(1).

dumping and countervailing duty cases,[7] the Court finds the deference that the decisions mandate is inapplicable where, as here, Congress has charged the Court with the responsibility of ascertaining the "correct result." *See Jarvis Clark,* 2 Fed.Cir. (T) at 75, 733 F.2d at 878. Such deference is logically incompatible with the Court's role in customs classification cases because the standard in these cases requires the Court to reject any interpretation, *however reasonable,* that the Court determines is incorrect. As a result, the Court concludes deference in the customs classification context would necessarily and improperly subvert the Court's statutorily-based review authority.

None of the other matters raised by defendant in its papers or in oral argument supports Customs' classification of the subject merchandise under subheading 4010.91.15. Consequently, for the reasons noted previously, the Court concludes plaintiff has overcome the presumption of correctness attached to Customs' classification by demonstrating the agency erroneously classified the subject merchandise under subheading 4010.-91.15.

### D. *Application of Subheading 4010.91.19*

■ The Court next considers whether the subject merchandise is properly classifiable under subheading 4010.91.19. As indicated above, this subheading applies to "Conveyor or transmission belts or belting, of vulcanized rubber: .... Other: Of a width exceeding 20 cm: Combined with textile materials: .... Other...." The Court has little trouble concluding subheading 4010.91.19 applies to the imported belts.

The undisputed facts in this case clearly show the subject merchandise falls under the subheading's description. These facts indicate the following: (1) the merchandise consists of conveyor belts composed from vul-

canized rubber; (2) the width of the belts exceeds 20 centimeters; and (3) the imports have textile components combined with the vulcanized rubber. Pl.'s Statement at ¶¶ 2, 14, 16, 18; Def.'s Resp. at ¶¶ 2, 14, 16, 18. These attributes thus place the merchandise squarely within the parameters of subheading 4010.91.19. As a result, the Court concludes the imported belts are properly classifiable under subheading 4010.91.19.

The ITC Report cited by plaintiff further supports the Court's conclusions in this case. As noted above, the Report correlates the TSUS provision under which Customs formerly classified the belts, item 358.16, to HTSUS subheading 4010.91.19, the provision upon which plaintiff relies, and to two other subheadings that are immaterial to this action. ITC Report at 316. Notably, the Report does not pair the former TSUS provision with the HTSUS subheading upon which defendant relies, 4010.91.15. Similarly, the Report matches defendant's claimed provision, subheading 4010.91.15, to item 358.14, TSUS, a provision that Customs did not apply to the subject merchandise. Id. at 301. Although the ITC Report is not entitled to "great weight," it is nevertheless "clearly relevant to the Court's inquiry" as it provides some indication of the intended relationship between the former provisions under the TSUS and the new provisions under the HTSUS. *Beloit Corp. v. United States,* 18 CIT ——, ——, 843 F.Supp. 1489, 1499–1500 (1994). As a result, the Court finds the ITC Report supplies additional support for the conclusion that Customs incorrectly classified the subject merchandise under subheading 4010.91.15 rather than under subheading 4010.91.19.

### IV. CONCLUSION

After considering all of the parties' contentions, the Court makes the following hold-

---

7. The standard of review in antidumping and countervailing duty cases sharply diverges from the *de novo* standard applicable to actions contesting Customs' denial of a protest. The standards governing the former group of cases are as follows:

The court shall hold unlawful any determination, finding, or conclusion found—

(A) in an action brought under paragraph (1) of subsection (a) of this section, to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or

(B) in an action brought under paragraph (2) of subsection (a) of this section, to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.

19 U.S.C. § 1516a(b)(1) (1988).

ings: (1) plaintiff has overcome the statutory presumption of correctness attached to Customs' classification of the subject merchandise under subheading 4010.91.15, HTSUS; and (2) plaintiff has demonstrated the merchandise is properly classifiable under subheading 4010.91.19, HTSUS. The Court will enter judgment for plaintiff.

## ORDER

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** the classification of the subject merchandise by the United States Customs Service under subheading 4010.91.15, HTSUS, is reversed; and it is further

**ORDERED** the United States Customs Service shall reliquidate the subject merchandise under subheading 4010.91.19, and shall refund all excess duties with interest as provided by law within 60 days from the date of this Order; and it is further

**ORDERED** plaintiff's motion for summary judgment is granted; and it is further

**ORDERED** defendant's cross-motion for summary judgment is denied.