Slip Op. 07 - 17

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x
VALUE VINYLS, INC.,                          :

                            Plaintiff, :

                  v.                         :   Court No. 01-00896

UNITED STATES,                               :

                            Defendant. :
- - - - - - - - - - - - - - - - - - - - x


Opinion

[Upon cross-motions as to classification
 of certain plastic-coated textiles,
 summary judgment for the plaintiff.]


                                    Decided: January 30, 2007


     Givens & Johnston PLLC (Robert T. Givens and Rayburn Berry)
for the plaintiff.

     Peter D. Keisler, Assistant Attorney General; Barbara S.
Williams, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (James A. Curley); and Office of Assistant Chief Counsel,
International Trade Litigation, U.S. Bureau of Customs and Border
Protection (Beth C. Brotman), of counsel, for the defendant.


          AQUILINO, Senior Judge:  Courts are to interpret the
language of statutes so as to give effect to the intent of
Congress.  E.g., Minor v. Mechanics Bank of Alexandria, 26 U.S. 46,
64 (1828); United States v. American Trucking Ass'ns, Inc., 310

U.S. 534, 542 (1940).  Sometimes they yield to the legislative intent even when "it appears that a literal interpretation of the statute involved would produce a result contrary to the apparent legislative intent".  Procter & Gamble Mfg. Co. v. United States, 19 CCPA 415, 419, T.D. 45578 (1932).

> . . . All rules of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule.  The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent.

Brecht Corp. v. United States, 25 CCPA 9, 13, T.D. 48977 (1937)(citations omitted), quoting from United States v. Clay Adams Co., 20 CCPA 285, 288, T.D. 46078 (1932).

The "starting point for interpreting a statute is the language of the statute itself."  Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  And "where Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute." Pillowtex Corp. v. United States, 171 F.3d 1370, 1373 (Fed.Cir. 1999).  However, when that is not the case, courts resort to legislative history for assistance in interpreting the meaning. See, e.g., Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631 (2005).

I

The parties to this action, which was commenced pursuant to 28 U.S.C. §1581(a) and has been designated a test case pursuant to USCIT Rule 84(b), have called these principles of the law into account via cross-motions for summary judgment as to the correct classification of imported goods that are described in plaintiff's complaint, paragraph 1, as

> in sheet form of woven textile fabric, of a single polyester man-made fiber, coated or laminated such that it is completely encased or covered on both sides with compact polyvinyl chloride (PVC) non-cellular plastic (vinyl coated or laminated articles of such textile composition are commonly known as "supported" vinyls).

The complaint contests their classification by the U.S. Customs Service, as it was still known during the times of their entry, under subheading 3921.90.1950 of the Harmonized Tariff Schedule of the United States ("HTSUS").

Protests of this approach (in lieu of plaintiff's preferred classification under subheading 3921.90.11) precipitated Service denial thereof per ruling HQ 963747 (June 25, 2001)[1], which concluded that the decision in Semperit Indus. Prods., Inc. v. United States, 18 CIT 578, 855 F.Supp. 1292 (1994),

---

[1] Plaintiff's Memorandum of Law, Exhibit 1 and Defendant's Brief, Exhibit A.

is applicable to the subject products.  The court interpreted the statement "predominate by weight over any other single textile fiber" in regard to the HTSUS.  The court determined that "the term 'predominate' . . . clearly refers to man-made fibers which, in terms of weight and relative to any other single textile fiber, constitute the stronger, main, or leading element, or hold advantage in numbers or quantity."  . . . 18 CIT at 585; 855 F.Supp. at 1298.  Thus, pursuant to *Semperit*, in order for subheading 3921.90.11, HTSUS, to be applicable, the subject merchandise would have to be comprised of man-made fiber and another textile fiber.  Because the products at issue are made up of only man-made fiber, subheading 3921.90.11, HTSUS, is not the correct tariff provision.[2]

The court had rendered its decision after determining that there was no clear legislative intent.

HQ 963747 refers, among other things, to findings by Customs that plaintiff's merchandise weighed less than 1.492 kilograms per square meter, was 82 percent plastic and 18 percent textile by weight, and consisted of "tarpaulin type material"[3] used in making truck covers and similar barrier coverings, dividers, upholstery and signs and barriers.

A

There is no controversy over these findings of fact — or over any other fact material to resolution of this case save the

---

[2] *Id*. at 5.

[3] *Id*. at 1.

genesis and meaning of the competing tariff provisions, which, of course, are fundamentally issues of law.  Compare Plaintiff's Statement of Material Facts as to Which There are No Genuine Issues to be Tried with Defendant's Response to Plaintiff's Statement of Material Facts and Defendant's Statement of Material Facts Not in Dispute.  In short, this matter is ripe for adjudication via summary judgment.  Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).

The parties agree that plaintiff's entries at issue landed under HTSUS heading 3921 ("Other plates, sheets, film, foil and strip, of plastics").  Their dispute focuses on subheading .90.11 versus .90.19 which were set forth in the HTSUS (1998), for example, as follows:

```
3921.90      Other:
                    Combined with textile materials and
                    weighing not more than 1.492 kg/m²:
                          Products with textile components
                          in which man-made fibers predomi-
                          nate by weight over any other
                          single textile fiber:
3921.90.11                     Over 70 percent by weight
                               of plastics................ m²... 4.2%
                                                           kg
3921.90.15                     Other      ................ m²... 6.9%
                                                           kg
3921.90.19                Other................................. 5.3%
```

Plaintiff's position herein, however, draws upon the Tariff Schedules of the United States ("TSUS") that preceded the adoption

of the HTSUS, in particular item 355.81 located in Schedule 3 ("Textile Fibers and Textile Products"), Part 4 ("Fabrics of Special Construction or For Special Purposes . . .") (1988), to wit:

```
        Woven or knit fabrics (except pile or tufted fabrics),
          of textile materials, coated or filled with rubber
          or plastics material, or laminated with sheet rubber
          or plastics:
                                    *    *    *
          Of man-made fibers:
  355.81          Over 70 percent by weight of rubber or
                  plastics....................... Sq. yd. 4.2% ad val.

  355.82          Other................................. 8.5% ad val.
                                 *    *    *
  355.85   Other.............................. Sq. yd. 5.3% ad val.
```

See Plaintiff's Brief in Reply, Exhibit B. The court does not read the parties' cross-motion papers as in disagreement that this TSUS item is the predecessor of HTSUS subheading 3921.90.11, supra. See, e.g., Plaintiff's Memorandum of Law, Exhibit 2, second page (Conversion of the Tariff Schedules of the Unites States Annotated Into the Nomenclature Structure of the Harmonized System, Annex III: Cross-Reference From Converted Tariff Schedule to Present TSUSA, p. 288, USITC Pub. 1400 (June 1983)). And the court could conclude that, were TSUS item 355.81 still in effect[4], plaintiff's merchandise would be correctly classifiable thereunder. See

---

[4] TSUS General Headnote and Rule of Interpretation 9(f)(i) (1988) defined "of" when used between the description of an article and a material to mean the "article is wholly or in chief value of the named material".

Spradling Int'l, Inc. v. United States, 17 CIT 40, 811 F.Supp. 687 (1993).

To be sure, such a conclusion would not directly govern this case, although the plaintiff points back to that item in vigorously pressing that "there is in fact very considerable legislative history demonstrating that Congress did intend [HTSUS 3921.90.11] to include plastic coated textiles consisting of a single man-made fiber."  Motion for Summary Judgment, p. 3. (boldface and underscoring deleted).  That history includes a presidential request that the U.S. International Trade Commission ("USITC"), in preparing for the conversion of the TSUS into HTSUS, "avoid, to the extent practicable and consonant with sound nomenclature principles, changes in rates of duty on individual products."  USITC, Institution of Investigation for the Conversion of the Tariff Schedules of the United States into the Nomenclature Structure of the Harmonized System, 46 Fed.Reg. 47,897 (Sept. 30, 1981).  And, at the time of adoption of the HTSUS, a congressional report stated that the "conferees believe that the HTS fairly reflects existing tariff and quota treatment and that the conversion is essentially revenue-neutral." H.R. Rep. No. 100-576, p. 548 (1988).  See generally Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, 102 Stat. 1107.

Annex I to USITC Publication 1400, page 39-10 (June 1983), contained a version of subheading 3921.90.11 with the language "in which the textile material is in chief value of man-made fibers". Chief-value is defined by General Legal Note 8(e) to that publication to mean when "such material exceeds in value each other single component material of the article". That deviation from the defined term "of", meaning "wholly or in chief value" in TSUS 355.81, to direct use of "chief value", and in omitting the words "wholly or" in that 1983 possible conversion, could be of concern but for Annex III to USITC Publication 1400, which reflects the precise intent of the conversion.

Annex III served the purpose of equating items in the TSUS to subheadings in the new HTSUS in the planned conversion. As evidenced by the schedules, HTSUS subheading 3921.90.11 is clearly the successor to TSUS item 355.81 while HTSUS 3921.90.19 has its own, multiple predecessors, ranging from items 355.15 to 355.85, non-inclusive and, notably, excluding 355.81. Although the differing language of the provisions could indicate change in meaning, given the demonstrated executive and legislative intent to leave the tariff provisions intact to the extent possible, this court can conclude that the U.S. government intended that HTSUS subheading 3921.90.11 apply to supported textiles of the kind now at bar, supplanting precedent TSUS item 355.81.

The Trade and Tariff Act of 1984, Pub. L. No. 98-573, 98 Stat. 2948, altered Schedule 3 of the TSUS with the intent that such amendment provide for imports to be included in items 355.65 to 355.85 "regardless of the relative value of the contained textile fibers, rubber, and plastics" and, additionally, restored the classification of "many products previously classified in schedule 3".[5]   Following Congress's corrective elimination of relative value as a determinative element in the TSUS, the Office of the U.S. Trade Representative published the Proposed United States Tariff Schedule Annotated in the Harmonized System Nomenclature (July 1987), replacing the 1983 language of proposed HTSUS subheading 3921.90.11, "textile material is in chief value of man-made fibers", with "textile components in which man-made fibers

------

[5] S. Rep. No. 98-308, p. 6 (1983).  See also H.R. Conf. Rep. No. 98-1156, p. 5 (1984).  That Senate Report states:

> As a result of two recent decisions . . . [in] United States v. Canadian Vinyl Industries, 64 CC.P.A. 97 (1977), and United States v. Elbe Products Corp., [68 CCPA 72] (1981), that ruled against the government's position on classification, many products previously classified in schedule 3 are now entering lower duty rates under schedule 7.  The committee is convinced that the court erred in interpreting the law and Congressional intent with respect to the proper classification of these coated fabrics.  The purpose of section 111 is to reverse the court's decisions and to restore the proper classification of these fabrics to that understood by the Customs Service and Congress prior to the decisions.

predominate by weight over any other single textile fiber", the latter being the language now under consideration herein.  On its face, that change eliminated the previously-defined term "chief value" and replaced it with similar albeit undefined, comparative language with respect to weight rather than value.

B

Whatever the precise presidential and congressional intent, defendant's position now is that "the operative language of 3921.90.11 . . . brought about a change in meaning in that provision when compared to item 355.81, TSUS."  Defendant's Brief, p. 4.  It prays for this court's deference to HQ 963747, which is "eligible to claim respect" per United States v. Mead Corp., 533 U.S. 218, 221 (2001), to the extent of

> the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

In acknowledging that it is a "primary function of the courts to determine legislative intent"[6], HQ 963747 merely states

---

[6] Supra n. 1, p. 3.

that, in regard to the applicability of <u>Semperit</u>, <u>supra</u>, "[n]o contrary legislative intent was found" and that the "protestant's argument and exhaustive presentation of the legislative history of tariff treatment of man-made textile articles [are] not persua[sive]."[7]

As indicated, this court is not so unconvinced, but it clearly understands defendant's adherence to and reliance on <u>Semperit Indus. Prods., Inc. v. United States</u>, 18 CIT 578, 855 F.Supp. 1292 (1994). In fact, in that case the defendant had urged the court to follow its interpretation of "[w]ith textile components in which man-made fibers predominate by weight over any other single textile fiber" that it

> does *not* require the presence of more than one "class of" textile fiber in order for man-made fibers "to predominate by weight over any other single textile fiber."

> Defendant maintains "the common meaning of the term 'predominates' does not require the physical presence of another entity for comparison." . . . In addition, defendant asserts "[e]ven if a comparison is indicated by definition or use [of the term 'predominate,'] neither the definitions or use of the term in the HTSUS require the actual physical presence of another entity (*e.g.*, textile fibers other than man-made fibers), rather than the complete **absence** of any other entity, for comparison." . . . Defendant also claims the use of the

---

[7] <u>Id</u>. at 4.

term "predominate" in subheading 4010.91.15 "merely
requires that man-made fibers be superior in weight * * *
or dominate over 'any other single textile fiber.'"  . . .
In sum, according to defendant, "[t]he fact that the
statute provides instructions for situations where other
textile fibers **may** be present with man-made fibers does
not mean that articles in which **only** man-made fibers are
present are precluded from classification under HTSUS
subheading 4010.91.15."

18 CIT at 582-83, 855 F.Supp. at 1296 (emphasis in original;

citations omitted).  That language was found in a different chapter

of the HTSUS, 40, and under a different heading, 4010, encompassing

much different merchandise than that at bar, namely, industrial

conveyor belts produced from a combination of vulcanized rubber and

textile material.  Be those differences as they were, the plaintiff

in Semperit, much like Value Vinyls, Inc. now, asserted that

Customs' classification d[id] not accord with cross-
reference tables found in the ITC Report which correlate
former TSUS items with HTSUS subheadings.  . . .

18 CIT at 582, 855 F.Supp. at 1296 (citations omitted).  The court

concurred.

The court disagreed not only with the defendant's

interpretation of the meaning of "predominate"[8], it held a

differing view[9] of the USITC's cross-reference tables:

---

[8] See 18 CIT at 585-86, 855 F.Supp. at 1298-99.

[9] Cf. 18 CIT at 583-84, 855 F.Supp. at 1300.

The ITC Report cited by plaintiff further supports the Court's conclusions in this case. As noted above, the Report correlates the TSUS provision under which Customs formerly classified the belts, item 358.16, to HTSUS subheading 4010.91.19, the provision upon which plaintiff relies, and to two other subheadings that are immaterial to this action. . . . Notably, the Report does not pair the former TSUS provision with the HTSUS subheading upon which defendant relies, 4010.91.15. Similarly, the Report matches defendant's claimed provision, subheading 4010.91.15, to item 358.14, TSUS, a provision that Customs did not apply to the subject merchandise. . . . Although the ITC Report is not entitled to "great weight," it is nevertheless "clearly relevant to the Court's inquiry" as it provides some indication of the intended relationship between the former provisions under the TSUS and the new provisions under the HTSUS. *Beloit Corp. v. United States*, 18 CIT 67, 81, 843 F.Supp. 1489, 1499, 1500 (1994). As a result, the Court finds the ITC Report supplies additional support for the conclusion that Customs incorrectly classified the subject merchandise under subheading 4010.91.15 rather than under subheading 4010.91.19.

18 CIT at 588, 855 F.Supp. at 1300 (USITC citations omitted). Cf. Anhydrides & Chemicals, Inc. v. United States, 130 F.3d 1481, 1483-84 (Fed.Cir. 1997).

Given the legislative history, including the expectation that the conversion from TSUS to HTSUS be revenue neutral, this court need not have inquired further into the meaning of the statute. Cf. Pillowtex Corp. v. United States, supra.

II

In view of the foregoing, plaintiff's motion for summary judgment should be granted and defendant's cross-motion denied. Final judgment will enter accordingly.

Decided:  New York, New York
          January 30, 2007


                                    /s/Thomas J. Aquilino, Jr.
                                         Senior Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge


- - - - - - - - - - - - - - - - - - - - - -X
VALUE VINYLS, INC.,
                                            :
                        Plaintiff,
                                            :
            v.                                  Court No. 01-00896

UNITED STATES,                              :

                        Defendant.      :
- - - - - - - - - - - - - - - - - - - - - -X


        This case having been duly submitted for decision; and
the court, after due deliberation, having rendered a decision
herein;  Now therefore, in conformity with said decision, it is

        ORDERED, ADJUDGED and DECREED that plaintiff's motion
for summary judgment be, and it hereby is, granted; and it is
further hereby

        ORDERED, ADJUDGED and DECREED that the merchandise that
underlies this case is correctly classifiable under subheading
3921.90.11 of the Harmonized Tariff Schedule of the United
States; and it is further hereby

        ORDERED that Customs and Border Protection, United
States Department of Homeland Security, reliquidate any entries

of said merchandise that have not been liquidated under the aforesaid HTSUS subheading and refund to the plaintiff any excess duties paid, together with interest thereon as provided by law.

Decided: New York, New York
          January 30, 2007


                                    /s/ Thomas J. Aquilino, Jr.
                                         Senior Judge