621

David A. SIMPSON and Karen L. Simpson, Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

Civ. No. 92–5104.

United States District Court, W.D. Arkansas, Fayetteville Division.

April 16, 1993.

Laura McKinnon and Nancy Hamm, Fayetteville, AR, for plaintiffs.

William Griffin, Friday, Eldredge & Clark, Little Rock, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

By memorandum opinion and order of this court filed on March 16, 1993, plaintiffs were "ordered and directed to endorse and deliver to Liberty Mutual Insurance Company" the checks which are the subject matter of this declaratory judgment action. The court ordered that the checks were to be delivered not later than ten days from the date of the court's order.

Now before the court is plaintiffs' "Motion for New Trial and to Alter Judgment and for Stay of Judgment," contending that the court should reconsider its decision and "alter" the judgment. The alteration sought is that the court reverse itself and hold that plaintiffs are entitled to keep the proceeds [1] of the two checks or drafts in dispute.

Counsel for plaintiffs attempt to justify their attempt to get a "second bite at the apple" by arguing that they should be allowed to do so: "Because the defendant did not raise the debt-versus-lien distinction in its summary judgment brief...." In the first place, that, as pointed out in defendant's response, is simply not true. For example, at page 4 of its brief in response to its motion for summary judgment filed before the court's earlier opinion, defendant said:

> Intervention does not magically 'create' the existence of indebtedness to the workers' compensation carrier due to benefits it has paid to the employee. Rather, intervention simply 'perfects a lien' on behalf of the carrier upon the proceeds of any settlement or judgment paid by a third party tortfeasor to the employee. *See generally, Hartford Insurance Group v. Carter*, 251 Ark. 680, 473 S.W.2d 918 (1971).

Additionally, even if that were true, it would not entitle plaintiffs to a "new trial" as

requested by them. The issue before the court clearly was whether defendant's failure to intervene in the Massachusetts lawsuit constituted a waiver of its rights provided by § 40 of the Arkansas Worker's Compensation Act. That issue by its very nature raises all issues respecting the interpretation of § 40 of the Act, so the analysis of the court set forth in its memorandum opinion was certainly justified and should have been expected, even if that made a difference.

In any event, the court concludes that the additional arguments made by plaintiffs in their new motion and brief have already been considered by the court and rejected in its earlier opinion. These arguments are without merit.

The only thing "new" contained in plaintiffs' motion and brief is a citation to *John Garner Meats v. Ault*, 38 Ark.App. 111, 828 S.W.2d 866 (1992). It is true that the court did not discuss that case in its earlier opinion. Frankly, it was unaware of that decision because plaintiffs' counsel had not earlier cited it and unfortunately, the court failed to find it in its independent research.

However, even if that case had been called to the court's attention before its initial opinion, it would not have made a difference. That case was a mere reiteration of the Arkansas Court of Appeals' holding in *Jackson Cookie v. Fausett*, 17 Ark.App. 76, 703 S.W.2d 468 (1986). Contrary to plaintiffs' argument, neither of those cases say that an employer loses all rights granted by § 40 of the Arkansas Worker's Compensation Act by failing to intervene in a lawsuit filed by the injured employee.

As discussed in detail in our earlier opinion, all that the court said in *Jackson Cookie* is that the Worker's Compensation Commission was correct (or at least would not be reversed) in holding that an employer or insurance carrier which had failed to protect itself so that it could recover the amount due it from the settlement corpus would not be

---

1. Alarmingly, the court is advised, both in the motion and in an affidavit of one of plaintiff's attorneys, Laura McKinnon, that: "Through the inadvertence and mistake of a former member of the office staff of plaintiffs' counsel, said checks were deposited in the client trust account." It is not explained how the "office staff of plaintiffs' counsel" managed to deposit checks or drafts made jointly payable to Liberty Mutual without the endorsement of an authorized representative of that company.

allowed to later impose a credit against benefits subsequently due to the extent of terminating or reducing the benefits due. In other words, the court apparently said that the employer or carrier may not recover the amount due it by withholding or terminating regular and periodic benefits due, but it did not say that, unless they intervened, they lost their right to any portion of the settlement proceeds.

That distinction can be explained by practical considerations. When a tort claim is settled there is available a sum of money for distribution. Unless the carrier is "settled around," that sum of money was paid for the entire lawsuit—a portion of the sum belongs to the carrier and the remainder to the employee. At the moment of settlement the money is available for distribution to the persons or entities to whom it belongs. The carrier gets its portion and the employee his.

On the other hand, if the carrier or employer lets its portion "get away" because it did not protect itself in the manner provided by law, it can be argued that it is simply not "fair" or "right" to allow them to belatedly cut off the employee's compensation benefits by imposing a credit.

The *Ault* case now cited by plaintiffs says nothing that wasn't said in *Jackson Cookie*. The fact that it disallows a "credit" is nothing new. That is exactly what the court did in *Jackson Cookie,* so for the reasons stated in this court's earlier opinion and above, the court does not believe that either the Arkansas Court of Appeals or the Arkansas Supreme Court has held, or is likely to hold, that an employer or its worker's compensation carrier loses forevermore its right to insist that it be paid that portion of a tort settlement paid for the employer's or carrier's portion of the claim simply because there was a failure to do those things necessary to secure the payment by a lien on the settlement proceeds.

The cases relied on by plaintiffs only say that the employer or carrier who does not collect its portion of the settlement at the time it is made may not, after the fact, collect what is owed by imposing a credit against future compensation benefits due.

Plaintiffs' motion is denied and their counsel are, once again, ordered and directed to immediately pay to defendant the proceeds from the checks or drafts which they "through inadvertence and mistake ... deposited in the client trust account." Alternatively, if plaintiffs intend, as indicated in their motion, to appeal this court's decision in this case, they shall immediately deposit such amount into the registry of this court. In such event, the court will further consider the disposition of such funds upon the filing of a notice of appeal and a proper request that the court's judgment be stayed or superseded pending such appeal. At that time the court will determine, upon proper request being made, whether the holding of the funds in the registry of the court is sufficient "conditions for the security of the adverse party" required by Rule 62(b) of the Federal Rules of Civil Procedure.

The court is concerned about the "inadvertence or mistake" which resulted in the checks or drafts being "cashed" and deposited in an account controlled solely by plaintiffs' counsel. The checks or drafts were issued jointly payable to the plaintiffs and Liberty Mutual for the obvious purpose of preventing either "side" from having sole control over such funds pending the outcome of expected litigation culminating in this declaratory judgment action.

The court simply does not understand how it is possible to, absent gross negligence by a bank or other paying institution, through either inadvertence or mistake, convert a check or draft so issued to one of the joint payee's use or control without wrongfully placing the name of the other payee on the instrument. Because of the court's concern in this respect and because of its perceived duty to insure that officers of this court take only authorized and permissible actions in cases before the court, plaintiffs' counsel are directed to explain to the court **within seven days of the date of this opinion** when and how the checks or drafts were converted to the use or control of such counsel.

Such explanation shall include a specific and complete description of how it was possible to negotiate such instruments in view of the joint payee tenor of them. If some per-

son or persons wrote or otherwise placed the name of Liberty Mutual or a purported representative of that company on the instruments, such person or persons shall be identified and their reasons or authority for doing so shall be stated.

### ORDER

On this 16th day of April, 1992, comes on for consideration plaintiffs' "Motion for New Trial and to Alter Judgment and for Stay of Judgement", and, for the reasons stated in a memorandum opinion of even date, such motion is denied. Plaintiffs' counsel are ordered and directed to immediately pay to defendant the proceeds of the check or drafts which are the subject matter of this lawsuit. Alternatively, if plaintiffs intend to appeal this court's decision, such funds shall be immediately paid into the registry of this court to be disbursed when and in the manner to be subsequently determined by the court.

IT IS FURTHER ORDERED by the court that counsel for plaintiffs shall, within seven days of the date of this order, explain to the court in writing when and how the checks or drafts were converted to the use or control of such counsel. Such explanation shall include a specific and complete description of how it was possible to negotiate such instruments in view of the joint payee tenor of them. If same person or persons wrote or otherwise placed the name of Liberty Mutual or a purported representative of that company on the instruments, such person or persons shall be identified and their reasons or authority for doing so shall be stated.

IT IS SO ORDERED.