# United States Court of Appeals for the Federal Circuit

2007-1562

VALUE VINYLS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Robert T. Givens, Givens & Johnston, PLLC, of Houston, Texas, argued for plaintiff-appellee.

Marcella Powell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With her on the brief were Barbara S. Williams, Attorney in Charge, International Trade Field Office, and Jeanne E. Davidson, Director, of Washington, DC. Of counsel was Beth C. Brotman, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

2007-1562

VALUE VINYLS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of International Trade in Case No. 01-00896, Senior Judge Thomas J. Aquilino, Jr.

_____

DECIDED: June 16, 2009

_____

Before NEWMAN and MOORE, Circuit Judges, and GETTLEMAN, District Judge.[*]

Opinion for the court filed by Circuit Judge NEWMAN. Dissenting opinion filed by District Judge GETTLEMAN.

NEWMAN, Circuit Judge.

This appeal concerns the proper classification of a plastic-coated textile product imported by Value Vinyls, Inc. The question is whether the Court of International Trade correctly concluded that the imported product, whose textile component is made entirely

_____

[*] The Honorable Robert W. Gettleman, United States District Court for the Northern District of Illinois, sitting by designation.

of man-made fibers, is a "product with textile components in which man-made fibers predominate by weight over any other single textile fiber" and hence is classified under subheading 3921.90.11 of the Harmonized Tariff Schedule of the United States (HTSUS), or whether, as the government argues, this category does not include product made entirely of man-made fibers. We conclude that the Court of International Trade correctly classified the subject goods.

BACKGROUND

Value Vinyls' product is a plastic-coated fabric material that is imported in sheets, and is used in making products such as truck covers, barrier coverings, dividers, upholstery, signs, and barriers. The product is comprised of a textile layer made from a polyester fiber, coated on both sides with a layer of compact polyvinyl chloride. Value Vinyls imported the goods during 1998, 1999, and 2000, through the ports of Los Angeles, San Francisco, and Dallas. Upon import, United States Bureau of Customs and Border Protection ("Customs") (formerly known as the United States Customs Service, see 6 U.S.C. §542 & notes) classified the goods under HTSUS subheading 3921.90.19, at a duty rate of 5.3% ad valorem. Value Vinyls protested, arguing that subheading 3921.90.11 was the proper classification, at a duty rate of 4.2% ad valorem. Customs denied the protests, and Value Vinyls challenged the classification in the Court of International Trade.

The Court of International Trade held that subheading 3921.90.11, which includes "textile components in which man-made fibers predominate by weight over any other single textile fiber," encompasses product whose textile component contains only man-made fibers. Value Vinyls, Inc. v. United States, No. 01-00896, 2007 WL 273839

(Ct. Int'l Trade Jan. 30, 2007). The court granted rehearing, and then adhered to its decision. Value Vinyls, Inc. v. United States, No. 01-00896, 2007 WL 2071535 (Ct. Int'l Trade July 20, 2007). The government appeals.

DISCUSSION

Interpretation of the tariff schedules, as a question of statutory interpretation, is reviewed as a matter of law. Degussa v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007). Whether a particular imported product fits within a correctly interpreted tariff provision is a question of fact, which we review for clear error. Id. In this case, the only question is interpretation of the tariff schedule. See General Elec. Co.-Med. Systems Group v. United States, 247 F.3d 1231, 1235 (Fed. Cir. 2001) ("When there is no genuine dispute over the nature of the merchandise, the classification of the merchandise is a question of law.").

The HTSUS is organized by chapters, which encompass broad subject matter categories; headings, which set forth particular classes of merchandise; and subheadings, which further separate goods within each class. See Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Following the General Rules of Interpretation (GRI) of the HTSUS, the classification of merchandise is determined according to the terms of the headings and subheadings and any relevant section or chapter notes. See id. at 1440.

The parties agree that the goods here at issue are within chapter 39 and under heading 3921 for "Other plates, sheets, film, foil and strip, of plastics." The dispute is between subheadings 3921.90.11 and 3921.90.19. The relevant provisions follow:

3921    Other plates, sheets, film, foil and strip, of plastics:
* * *

| 3921.90 | Other: | | |
| | Combined with textile materials and weighing not more than 1.492 kg/m$^2$: | | |
| | Products with textile components in which man-made fibers predominate by weight over any other single textile fiber: | | |
| 3921.90.11 | Over 70 percent by weight of plastics ......……………………4.2% | | |
| 3921.90.15 | Other (229)…………………………..6.5% | | |
| 3921.90.19 | Other …………………………………………5.3% | | |

All agree that Value Vinyls' product satisfies the overall weight criterion of heading 3921.90, and the seventy percent plastics threshold of 3921.90.11. The question is whether the textile definition "man-made fibers predominate by weight over any other single textile fiber" includes textiles made entirely of man-made fibers.

The government argues that the word "predominate" requires two or more components, and thus cannot apply to a situation where only one fiber is present. Thus the government argues that Value Vinyls' goods cannot be included in 3921.90.11, and must instead be placed in the catch-all "Other" of subheading 3921.90.19. The government cites several dictionary definitions of the word "predominate" in support of this argument, but its chief support comes from an earlier decision of the Court of International Trade, which interpreted the word "predominate" in the way the government proposes, albeit for different goods in a different subheading of a different chapter of the HTSUS. In Semperit Industrial Products, Inc. v. United States, 855 F. Supp. 1292, 1298 (Ct. Int'l Trade 1994), the court held that the plaintiff's industrial conveyor belt products made with vulcanized rubber combined with textiles made entirely of man-made fibers are properly classified under HTSUS subheading 4010.91.19. The government argues that the court adopted the plain meaning of "predominate" in Semperit, and that this settled meaning must apply throughout the

HTSUS, rendering it not only unnecessary but improper for the court to redefine the term for the HTSUS subheading that applies to Value Vinyls' goods.

The Court of International Trade explained that it had found the language of 3921.90.11 ambiguous, and resorted to the legislative history including the conversion history to resolve that ambiguity, and to ensure that it reached the correct result. The court also recognized that the Semperit definition did not control the different HTSUS categories here at issue, and in all events is not binding precedent. See D & L Supply Co. v. United States, 22 Ct. Int'l Trade 539, 540 (1998) ("[T]he Court notes that it is not bound by a decision of another judge of the same court, although such a decision may be persuasive precedent."). The court recognized that its ultimate obligation was "to find the correct result, by whatever procedure is best suited to the case at hand." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984). The court then independently analyzed the tariff provisions relevant to the Value Vinyls goods.

The Court of International Trade found the history of conversion from the corresponding class in the prior Tariff Schedule of the United States (TSUS) to be particularly enlightening as to whether Congress intended to exclude textiles made wholly of man-made fibers from the scope of HTSUS subheading 3921.90.11. The court observed that goods with textiles made wholly of man-made fibers had previously been included in the predecessor to 3921.90.11. After assessing the relevant history and other indicia of statutory intent, the court concluded that the imported goods, with textile components made wholly of man-made fibers, are within subheading 3921.90.11, and that the catch-all "Other" of subheading 3921.90.19 includes textiles with a less than predominant amount of man-made fibers.

We conclude that the Court of International Trade correctly determined the meaning of "predominate" in the context of subheading 3921.90. See generally Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 93-94 (1934) ("The intention of the lawmaker . . . is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will."). The history of conversion from the TSUS to the HTSUS makes especially clear that there was no substantive change intended in the scope of the TSUS subheading when converted to the HTSUS subheading now at issue. Whatever generality of meaning is borne by the word "predominate," the history of the relevant provisions shows that the "man-made fibers predominate by weight" provision includes textiles made wholly of man-made fibers.

The Conversion Report issued by the International Trade Commission, the cognizant agency, states that HTSUS subheading 3921.90.11 corresponds to the former TSUS subheading 355.81, which covered plastic-coated fabrics whose textile component was made "of man-made fibers." The government agrees that TSUS subheading 355.81 encompassed Value Vinyls' goods. In contrast, the Conversion Report states that HTSUS subheading 3921.90.19 corresponds to TSUS subheading 355.85 (and some other provisions not relevant here). The structure of these corresponding TSUS subheadings was as follows, with emphasis added:

> Woven or knit fabrics (except pile or tufted fabrics), of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics:
>
>                           * * *

|         | Of man-made fibers: |               |
|---------|---------------------|---------------|
| 355.81  | Over 70 percent by weight of rubber or plastics .......................................... | Sq. yd. 4.2% |
| 355.82  | Other.................................................................... | 8.5%         |
|         | * * * |               |
| 355.85  | Other.................................................................... | Sq. yd. 5.3% |

The similarity to the HTSUS is apparent. In addition, TSUS General Headnote and Rule of Interpretation 9(f)(i) defined the word "of," when used between the description of an article and a material, as meaning that the "article is wholly or in chief value of the named material." This is the usage in the emphasized phrase above. Thus subheading 355.81 encompassed plastic-coated textile materials made wholly or in chief value of man-made fibers. When the TSUS was superseded by the HTSUS, the phrase "of man-made fibers," meaning "wholly or in chief value," was replaced by "man-made fibers predominate by weight over any other single textile fiber."

As the Court of International Trade observed, citing this history, this shift from value to weight was not a substantive change in the fiber content of goods under this section but a convenience for measurement, for weight is an objective metric, whereas value is not. HTSUS subheading 3921.90.11 therefore continued to cover, as had TSUS subheading 355.81, fabrics made wholly of man-made fibers, as well as fabrics containing "mostly" man-made fibers, with the only difference that "mostly" is now to be determined by relative weight, rather than value. There is no suggestion of any other legislative intent, either in the conversion history or in any other source we are aware of.

The government has pointed to no error in the court's view of the ITC's Conversion Report; instead, the government argues that the Conversion Report should be accorded no weight because it is not proper "legislative history," in that it states the intention of the executive agency, not Congress. The Conversion Report was designed

to explain the legislative actions being taken and to assist in applying them, and was properly considered by the Court of International Trade. We agree that this Report guides and supports the court's correlation of the TSUS and HTSUS provisions that encompass the subject goods.

The "harmonization" of the tariff schedule was designed generally to adopt internationally accepted product nomenclature while leaving United States tariff provisions substantially intact, without change in the applicable duties. See H.R. Rep. No. 100-576, at 548 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1581 ("The conferees believe that the HTS fairly reflects existing tariff and quota treatment and that the conversion is essentially revenue-neutral."); see also Marubeni Am. Corp. v. United States, 35 F.3d 530, 532-33 (Fed. Cir. 1994) (describing conversion to the Harmonized Tariff System). In guidelines provided with the President's request to the International Trade Commission to draft the harmonized schedule, President Reagan stated:

> In converting the tariff schedules the Commission should avoid, to the extent practicable and consonant with sound nomenclature principles, changes in rates of duty on individual products.

Anhydrides & Chems., Inc. v. United States, 130 F.3d 1481, 1484 (Fed. Cir. 1997) (quoting Institution of Investigation for the Conversion of the Tariff Schedules of the United States into the Nomenclature Structure of the Harmonized System, 46 Fed. Reg. 47,897, 47,897 (Sept. 30, 1981)). This court reasoned in Anhydrides that "[i]t is highly relevant that Congress and the executive stated their intention to maintain generally revenue-neutral tariff treatment in converting to the nomenclature of the HTSUS." Id. This principle further supports the conclusion that HTSUS subheading 3921.90.11

continues to encompass textiles consisting wholly of man-made fibers, for the only change in the move from the TSUS to the HTSUS was from value to weight, with no change in definition of the fiber itself, and no change in the duty rates for the relevant subheadings.

This history negates the interpretation that the change to the HTSUS removed wholly man-made fibers from the category that previously included such fibers, while providing no replacement category. Such interpretation would violate the principle of continuity of tariff embodied in the general charge to maintain revenue neutrality in the conversion from the TSUS to the HTSUS. The classification now proposed was explicitly precluded by the TSUS. Such a change, without any explanation by Congress or the cognizant agency, would be an "absurd construction," for it would move the Value Vinyls goods into the classification category for goods wherein the textile component does not have a predominant amount of man-made fiber, while excluding the Value Vinyl goods from the category previously designated for goods with mostly or wholly man-made fibers. See Witco Chem. Corp. v. United States, 742 F.2d 615, 619 (Fed. Cir. 1984) ("[A]n absurd construction of a statutory provision should be avoided." (citing Oates v. Nat'l Bank, 100 U.S. (10 Otto) 239, 244 (1879)); see also 2A Sutherland Statutory Construction §46.07 (4th ed. 1973 & supp. 1983) ("it is clear that if the literal import of the text of an act . . . leads to absurd results, the words of the statute will be modified by the intention of the legislature"). The Court of International Trade correctly concluded that the change from "value" to "weight" did not change the prior interpretation.

The Court of International Trade recognized that its interpretation diverged from

that in Semperit, where the word "predominate" was construed for different goods under a different heading. The government stresses the canon of statutory construction that the meaning of the same term used in different parts of the same statute is presumed to be the same. That is a sound canon. Nonetheless, a disputed term is not thereby insulated from analysis in light of the nature and structure of the statute, the provisions in which the term is used, the possibility of error in the prior construction, and any other relevant considerations in the particular case. When the earlier definition arose for a different HTSUS provision and different products, it is not immune from review and reapplication for different HTSUS provisions and products. See Degussa, 508 F.3d at 1047 ("The meaning of a tariff term is a question of law, reviewable de novo by this court . . . ."); see also General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 595-96 (2004) ("The presumption of uniform usage [throughout a statute] thus relents when a word used has several commonly understood meanings among which a speaker can alternate in the course of an ordinary conversation, without being confused or getting confusing." (footnote omitted)); Sherman v. Hamilton, 295 F.2d 516, 520 (1st Cir. 1961) ("[I]t is not unusual for the same word to have different connotations in the same act and surely no canon of statutory construction forecloses courts from attributing to the word the meaning which the legislature intended that it should have in each instance."); see also 2A Sutherland Statutory Construction §§46:05, 51.02.

We have not reviewed the correctness of the Semperit decision as applied to the goods and classification there at issue. As to the Value Vinyls goods and Chapter 39, the circumstances of this case are particularly weighty in light of the history of the conversion from TSUS subheading 355.81 to HTSUS subheading 3921.90.11. The

Court of International Trade did not err in holding that the definition and application of "predominate" in <u>Semperit</u> does not apply to these different goods and different HTSUS section.  The complexity of the tariff schedule, the great variety of products in trade, and the constant barrage of new products, all support the obligation of the Court of International Trade to reach the "correct result" in the case at hand.  <u>Jarvis Clark Co.</u>, 733 F.2d at 878.  We conclude that the court correctly ruled that subheading 3921.90.11 embraces products whose textile component is made wholly of man-made fibers, and therefore applies to Value Vinyls' goods.  The decision of the Court of International Trade is

<u>AFFIRMED</u>.

# United States Court of Appeals for the Federal Circuit

2007-1562

VALUE VINYLS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of International Trade in Case No. 01-00896, Senior Judge Thomas J. Aquilino, Jr.

GETTLEMAN, <u>District Judge</u>, dissenting.

I respectfully dissent from the majority opinion.

This international tariff case concerns the proper classification of a synthetic woven textile fabric (the "Fabric") imported by respondent Value Vinyls, Inc. ("Value Vinyls"). The sole issue on appeal is the proper interpretation of the operative language of HTSUS subheading 3921.90.11, which provides: "products with textile components in which man-made fibers predominate by weight over any other single textile fiber." Specifically, at issue is the meaning and function of the word "predominate," and whether a 100% man-made woven textile fiber product qualifies as a "product with textile components in which man-made fibers predominate by weight over any other single textile fiber" under HTSUS subheading 3921.90.11. My colleagues hold that the

Court of International Trade correctly ruled that HTSUS subheading 3921.90.11 applies to products with textile components made of entirely man-made fibers and properly classified the Fabric. I conclude that the Court of International Trade erred by holding that the term "predominate" was ambiguous within the meaning of HTSUS subheading 3921.90.11, and improperly relied on an agency report to reach its holding.

The terms used in the schedule are afforded their common or dictionary meaning unless the HTSUS or the legislative history provide a contrary definition. Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed. Cir. 1995); see also Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) ("A court may rely upon its own understanding of terms used, and may consult standard lexiographic and scientific authorities to determine the common meaning of a tariff term."). In addition, the court may "look to the Explanatory Notes accompanying a tariff subheading as a persuasive, but not binding, interpretative guide." Bauer Nike Hockey USA, Inc. v. United States, 393 F.3d 1246, 1250 (Fed. Cir. 2004) (citing Mita Copystar, 21 F.3d at 1082).

At the core of my disagreement with the majority is its willingness to disregard the plain meaning of the language of the HTSUS. The plain meaning of "predominate" is unambiguous. It necessarily "contemplates a hierarchy between two or more elements" and "incorporates a comparison between two or more entities and a determination that one of the entities outweighs the other." Semperit Indus. Prods., Inc. v. United States, 855 F. Supp. 1292, 1298 (Ct. Int'l Trade 1994). In Semperit, the Court of International Trade adopted this definition and engaged in a lengthy analysis of the common and popular meaning of the term "predominate." Id. While it is true that

Semperit is not binding on this court, I find the detailed analysis of the meaning of "predominate" wholly persuasive.

At issue in Semperit was the meaning of "predominate" as it appears in the sub-section of the HTSUS that applies to conveyor or transmission belting made of vulcanized rubber. Although the relevant subheadings in Semperit and the instant case are distinct in regard to the merchandise they encompass, the relevant language at issue is identical in both subheadings: "[w]ith textile components in which man-made fibers predominate by weight over any other single textile fiber." In the absence of a statutory definition or guiding legislative history, the Semperit court looked to the plain meaning of the statute and compared the common definition of "predominate" with various dictionary entries for the term. The Semperit court concluded that nothing in the HTSUS or common and popular meaning of predominate "suggests that one material can 'predominate' when no other material exists." Id., 855 F. Supp. at 1298-99. Thus, applying this logic to the instant case, because the Fabric is made of only one type of material, a subheading utilizing the word "predominate" is inapplicable.

The majority takes issue with the Semperit definition and finds it unpersuasive because the legislative history of the subheading in Semperit differs from the legislative history of HTSUS subheading 3921.90.11. Although it is true that Semperit and the instant case are distinguishable in some respects, it would be incorrect to rely on an administrative agency report (the "Conversion Report") as legislative history. The Conversion Report was issued by the International Trade Commission when the Tariff Schedule of the United States ("TSUS") was converted to the HTSUS. While the Conversion Report may shed light on congressional intent, it is merely an interpretive

text by the agency, and should not be relied on as conclusive legislative history in the face of the unambiguous plain language of the subheading.

Further, a review of the actual congressional legislative history of HTSUS subheading 3921.90.11 reveals nothing to compel a contrary result.  See Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1367 (Fed. Cir. 1998).  The TSUS General Headnote and Rule of Interpretation 9(f)(i)(1988) defined the word "of" when used between the description of a material and the material to mean the "article is wholly or in chief value of the named material."  Therefore, TSUS subheading 355.81 encompassed textile materials coated, filled or laminated with rubber or plastics made *only* of man-made fibers.  There is no language in TSUS subheading 355.81 limiting its scope to material comprised of two or more textile fibers.

In contrast, the new language of HTSUS subheading 3921.90.11 does create such a limitation.  The change in language from "wholly or in chief value" in the TSUS, to "predominate by weight" in the HTSUS evidences intent by Congress to change the meaning of the subheadings, not just the method of measuring the goods as the majority suggests.  See Bauch & Lomb, 148 F.3d at 1367 ("'A change in the language of a statute is generally construed to import a change in meaning . . . .'" (quoting Ruth F. Sturm, Customs Laws and Administration § 51.7 at 57 (1995))).  Consequently, any inference that the classification of fabrics having 100% man-made fibers under TSUS subheading 355.81 necessitates the classification of such fabrics under HTSUS subheading 3921.90.11 is, in my view, incorrect.

Based on its interpretation of the Conversion Report, the majority concludes that "predominate" can have multiple meanings within the HTSUS.  While I recognize my

colleague's faithfulness to the principle of continuity of tariffs in the conversion from TSUS to HTSUS, I am unconvinced that this mandates a departure from one of the primary rules of statutory construction:  words should be defined consistently throughout a statute "[a]bsent clear legislative intent to the contrary."  <u>Lynteq, Inc. v. United States</u>, 976 F.2d 693, 699 (Fed. Cir. 1992).  I find that it would be incongruous and confusing to ignore this rule.  The meaning of "predominate" has already been litigated, defined by the Court of International Trade, and applied as law by U.S. Customs and Boarder Protection.  I find no reason to assign multiple definitions to the term within the same statute.

The undisputed facts in this case establish that the subject Fabric has the following characteristics:  (1) it is a sheet of plastic; (2) combined with textile material; and (3) the textile component is made exclusively of a single man-made fiber.  Consequently, in my view, the man-made components of the subject Fabric cannot "predominate over any other single textile fiber" because there is no "other" fiber over which to predominate.  Therefore, the Fabric does not fall within HTSUS subheading 3921.90.11, and the goods must be classified under HTSUS subheading 3921.90.19 at a duty rate of 5.3% *ad valorem*.

Because I would reverse the Court of International Trade's decision, I respectfully dissent.